STATE of Minnesota, Respondent,

v.

Pedro JUMPING EAGLE,
Petitioner, Appellant.

No. C8–99–874.

Supreme Court of Minnesota.

Dec. 28, 2000.

John M. Stuart, State Public Defender, Theodora Gaitas, Assistant State Public Defender, Minneapolis, for appellant.

Mike Hatch, Attorney General, St. Paul, Susan Gaertner, Ramsey County Attorney, Mark Nathan Lystig, Assistant Ramsey County Attorney, St. Paul, for respondent.

## OPINION

PAGE, Justice.

In January 1993, Pedro Jumping Eagle was arrested for sexually assaulting a nine-year-old female. Jumping Eagle was charged with first-degree criminal sexual conduct, in violation of Minn.Stat. § 609.342, subd. 1(a) (1992), and subsequently pleaded guilty to the charged offense, pursuant to a plea agreement that made a number of contingent recommendations to the court regarding sentencing. At the time, Minn.Stat. § 609.346, subd. 5(a) (1992) (now codified at Minn.Stat. § 609.109, subd. 7 (1998)), required that Jumping Eagle's sentence include a mandatory term of conditional release.[1] The plea agreement, however, did not include any reference to the mandatory conditional-release term.

Accepting the agreement, the sentencing court sentenced Jumping Eagle to 172 months in prison, a double durational upward departure from the presumptive sentence of 86 months; departed dispositionally and stayed execution of the 172-month sentence and placed Jumping Eagle on probation for 30 years; required Jumping Eagle to serve one year in the county workhouse and complete the Alpha House sex-offender treatment program; and ordered him to pay restitution. The mandatory conditional-release term was not mentioned at Jumping Eagle's sentencing hearing and no such term was imposed by the court. In February of 1999, after five years of largely successful sex-offender treatment, a probation revocation hearing

was held at which Jumping Eagle admitted to violating the terms of his probation, resulting in revocation of his probation and execution of his 172-month prison sentence. At that hearing, the court for the first time mentioned the mandatory conditional-release term, which it then imposed in addition to the 172-month sentence. Jumping Eagle, claiming that the conditional-release term was not a part of the plea agreement and that he had not been informed about the conditional-release term at the time of sentencing, moved to withdraw his guilty plea, relying on *State v. Garcia*, 582 N.W.2d 879 (Minn.1998). That motion was denied. A divided panel of the court of appeals affirmed. *See State v. Jumping Eagle*, 602 N.W.2d 653 (Minn. App.1999).

A valid guilty plea must be accurate, voluntary, and intelligent. *See Alanis v. State*, 583 N.W.2d 573, 577 (Minn. 1998); *see also* Minn.R.Crim.P. 15.05, subd. 1 (stating court shall allow defendant to withdraw guilty plea if necessary to correct manifest injustice). "The voluntariness requirement insures that the guilty plea is not in response to improper pressures or inducements." *Alanis*, 583 N.W.2d at 577. Inducement of a guilty plea by promises that cannot be fulfilled invalidates the plea; possible remedies include requiring specific performance of the agreement, altering the sentence, or allowing the plea to be withdrawn. *See State v. Brown*, 606 N.W.2d 670, 674 (Minn.2000); *Garcia*, 582 N.W.2d at 882.

Interpretation and enforcement of plea agreements present issues of law that we review de novo. *See Brown*, 606 N.W.2d at 674. Each agreement necessarily presents unique facts, but our analysis is guided by *Garcia* and *Brown*. In *Garcia*, the defendant's plea-bargained sentence for attempted first-degree criminal

---

1. Conditional release is a period of supervision by the Commissioner of Corrections. The commissioner may revoke the conditional release and order the person to serve the remaining portion of the release term in prison if the terms of the release, crafted by the commissioner, are violated. *See* Minn.Stat. § 609 .109, subd. 7(b) (1998).

sexual conduct, *see* Minn.Stat. §§ 609.27, 609.342, subd. 1(e)(i) (1998), was amended to include the conditional-release term required by Minn.Stat. § 609.346, subd. 5(a), after the court had accepted his guilty plea. Garcia's plea petition made no mention of the conditional-release term, nor was it mentioned in any hearings on his case before or at the time of sentencing. *See Garcia,* 582 N.W.2d at 881. Even though we concluded that Garcia's plea agreement had been violated by the addition of the conditional-release term, we held that Garcia was not entitled to specific performance of his plea because conditional release was mandatory and nonwaivable. *See id.* at 881–82; *see also State v. Humes,* 581 N.W.2d 317, 319 (Minn. 1998). We remanded to the district court with instructions allowing Garcia to choose either to be bound by his original agreement plus the required conditional-release term or to withdraw his guilty plea. *See Garcia,* 582 N.W.2d at 882.

In *Brown,* we addressed the question of whether a defendant whose plea-bargained sentence was amended to include the mandatory conditional-release term may in every instance withdraw his guilty plea. Brown's plea agreement called for probation and a stayed 172–month sentence if he entered and completed a sex-offender treatment program; if he was not accepted into a treatment program, he was to receive an executed 86–month sentence. *See Brown,* 606 N.W.2d at 672. Brown was not admitted into treatment and received the 86–month sentence, later corrected to include the required five-year conditional-release term, which had not been mentioned in Brown's plea petition. *See id.* at 673.

We held that because, as the district court found, Brown's plea was induced by the opportunity for probation rather than the upper limit of his executed sentence, adding a conditional-release term to the maximum executed sentence did not violate the agreement. *See id.* at 675. We also held that, because Brown bargained for a sentence of up to 172 months as part of his plea agreement and the corrected sentence (86 months plus a five-year conditional-release term) was less than 172 months, allowing him to withdraw from the agreement was not required. *See id.* at 675 & n. 6 (clarifying that in *Garcia* the state conceded that the defendant could withdraw his plea under the circumstances and therefore the issue of whether withdrawal of the plea was a required remedy was not squarely before the *Garcia* court).

■ Here, Jumping Eagle understood he was subject to a 172–month sentence if he failed to successfully complete an approved treatment program. Like the defendant in *Brown,* Jumping Eagle was offered the opportunity for probation. While that opportunity no doubt played some role in inducing the plea, Jumping Eagle reserved the right to withdraw his plea if he was found amenable to a treatment program that the prosecutor opposed. Thus, it appears Jumping Eagle considered the maximum executed sentence significant in the negotiation of the plea.

Moreover, unlike the defendant in *Brown,* Jumping Eagle received both the maximum sentence to which he was subject under the plea agreement *and* an additional period of conditional release. Because the conditional-release term must be imposed, Jumping Eagle now faces a sentence that exceeds the upper limit of his court-accepted plea petition, thus violating that agreement.[2]

2. The state argues that Jumping Eagle had an agreement on a recommendation, not an agreement, as to sentence. *See Perkins v. State,* 559 N.W.2d 678, 687 (Minn.1997) (noting that petition provided that agreement on length of sentence was for recommendation only and defendant could not withdraw plea if court chose not to follow that recommendation). Although the terms of the agreement in this case literally called for a joint recommendation, the written plea petition provided that if the court did not "approve this agreement" Jumping Eagle had the absolute right to withdraw the guilty plea. We infer that by "ap-

Therefore, on remand, the court must either (1) allow Jumping Eagle to withdraw his plea, or (2) modify his sentence so that the maximum period of incarceration, including the period of conditional release, does not exceed the 172–month upper limit to which Jumping Eagle agreed. The state should be allowed to present to the court argument regarding whether the court should modify the sentence or allow the plea to be withdrawn. *See Chapman v. State*, 282 Minn. 13, 16–17, 162 N.W.2d 698, 700–01 (1968)) (noting that a plea should not be withdrawn and judgment vacated without the strongest of reasons, if serious prejudice to state); *see also Hoagland v. State*, 518 N.W.2d 531, 536–37 (Minn.1994) (discussing factors considered in determining whether state is unduly prejudiced by award of new trial).

Reversed and remanded.

prove the agreement" the parties meant that, if the court did not follow the recommendation, Jumping Eagle would have the right to withdraw. Moreover, the procedures used in *Perkins* and *State v. Ford*, 397 N.W.2d 875 (Minn.1986), to ensure that the defendant understood the trial court was free to depart from the recommended sentence, and that any departure would not allow the defendant to withdraw the plea, were not used here.

Finally, the plea transcript reflects that, before the plea was accepted, the parties discussed the agreement with the judge in chambers, presumably to determine whether she was likely to adhere to the joint recommendation. Therefore, despite the label used, Jumping Eagle bargained for more than a recommendation from the state. When the court sentenced him in accord with the joint recommendation, the agreement became binding.