Patrick William CAREY, Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A08–0432.

Court of Appeals of Minnesota.

May 19, 2009.

Lawrence Hammerling, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, for appellant.

Lori Swanson, Attorney General, St. Paul; and Susan Gaertner, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, for respondent.

Considered and decided by ROSS, Presiding Judge; TOUSSAINT, Chief Judge; and JOHNSON, Judge.

## OPINION

JOHNSON, Judge.

Patrick William Carey pleaded guilty to two counts of first-degree criminal sexual conduct. In a plea agreement, Carey and the state agreed that the district court would first impose an executed prison sentence for the later-occurring offense and then impose a stayed prison sentence for the earlier-occurring offense, notwithstanding section II.F. of the Minnesota Sentencing Guidelines, which provides that a district court must impose multiple sentences in the order in which the offenses occurred.

In a postconviction petition filed three years later, Carey sought to withdraw his guilty plea on the ground that his sentences were imposed, contrary to law, in a non-chronological manner. The district court denied the petition. We conclude that the district court's imposition of non-chronological sentences in a manner that is contrary to the sentencing guidelines but consistent with Carey's plea agreement is not a manifest injustice re-

quiring withdrawal of Carey's guilty plea. Therefore, we affirm.

## FACTS

In June 2004, the state charged Carey with two counts of first-degree criminal sexual conduct. In count I, the state alleged that Carey engaged in sexual conduct with a girl who was under the age of 13 and more than 36 months younger than Carey, in violation of Minn.Stat. § 609.342, subd. 1(a) (1990 & 1992 & Supp. 1995). The complaint alleged that the unlawful acts in count I occurred between January 1, 1991, and December 31, 1995. In count II, the state alleged that Carey engaged in sexual conduct with a second girl, who also was under the age of 13 and more than 36 months younger than Carey, in violation of Minn.Stat. § 609.342, subd. 1(a) (2002). The complaint alleged that the unlawful acts in count II occurred between December 1, 2003, and December 31, 2003.

In October 2004, the state filed an amended complaint, which included two additional counts. In count III, the state alleged that Carey engaged in sexual conduct with the first girl, who then was under the age of 16 and with whom Carey had a significant relationship, in violation of Minn.Stat. § 609.342, subd. 1(g) (2000 & 2002). The amended complaint alleged that the unlawful acts in count III occurred between August 1, 2000, and April 2, 2004. In count IV, the state alleged that Carey engaged in sexual conduct with the second girl, who was under the age of 13 and more than 36 months younger than Carey, in violation of Minn.Stat. § 609.342, subd. 1(a) (1996). The amended complaint alleged that the unlawful acts in count IV occurred between July 7, 1997, and July 6, 1998. In light of the amendment to the complaint, Carey was charged with four offenses, which were alleged to have occurred over a period of 13 years in the following chronological order: count I, count IV, count III, and count II.

In October 2004, Carey pleaded guilty to counts III and IV pursuant to a plea agreement with the state. In exchange, the state dismissed counts I and II. The plea agreement contemplated that, in exchange for his guilty plea, Carey would first receive an executed prison sentence of 144 months on count III, would then receive a consecutive, stayed prison sentence of 86 months on count IV, and would be placed on probation for 30 years from the date of sentencing. By allowing the district court to impose an executed sentence on count III before imposing a stayed sentence on count IV, the parties essentially agreed to disregard the second paragraph of section II.F. of the sentencing guidelines, which provides that a district court shall impose multiple sentences in chronological order based on the dates of the offenses. Sentencing according to the guidelines would have resulted in an initial sentence of 86 months on count IV and an additional sentence of 144 months on count III. In that event, Carey likely would have been required to serve a sentence of either 86 months of imprisonment or 230 months of imprisonment, depending on whether the district court ordered the sentences to be consecutive or concurrent. Under the plea agreement, however, the parties agreed that Carey should be required to serve a sentence of 144 months of imprisonment.

At the sentencing hearing in December 2004, the district court noted that the plea agreement provided for sentencing in non-chronological order. The district court, the prosecutor, and defense counsel engaged in a lengthy colloquy with Carey to establish that he understood that the manner of sentencing specified in the plea agreement was contrary to the sentencing

guidelines, that he agreed to the non-chronological manner of sentencing, and that he understood that the district court would consider allowing him to withdraw his guilty plea if he objected to the non-chronological manner of sentencing. Carey stated that he understood the nature of the agreed-upon procedure and that he wished to be sentenced contrary to the sentencing guidelines. The district court then sentenced Carey pursuant to the plea agreement by imposing an executed 144–month sentence on count III and a consecutive, stayed 86–month sentence on count IV. Carey did not pursue a direct appeal.

 In July 2007, Carey filed a petition for postconviction relief. He alleged that his sentences were illegal because they were imposed in non-chronological order. His petition and his district court memorandum sought one and only one form of relief: that he be allowed to withdraw his guilty plea.[1] The district court denied the petition. Carey appeals.

### ISSUES

I. Is Carey entitled to withdraw his guilty plea on the ground that the district court, pursuant to a plea agreement, imposed sentences on his two convictions in a non-chronological manner, contrary to section II.F. of the sentencing guidelines?

II. Is Carey entitled to postconviction relief on the ground that his trial counsel engaged in ineffective assistance of counsel?

### ANALYSIS

#### I.

Carey argues that the district court erred by denying his request to withdraw his guilty plea. Carey's brief, however, states, "The issue presented by appellant's case is whether or not a district court has the authority to disregard the express language of the sentencing guidelines and impose consecutive sentences in reverse-chronological order." Carey's brief also identifies a corollary issue, whether, "if the lower court did not have such authority, . . . what effect—if any—should be given to appellant's purported waiver of the application of this rule and his consent to the imposition of the bargained-for sentence." In response, the state emphasizes that "appellant is not asking to have his sentence corrected" but, rather, "is asking to withdraw his plea." We agree with the state. In light of the relief that Carey has requested, our analysis must be framed by rule 15.05, subdivision 1, of the Minnesota Rules of Criminal Procedure, which governs a request to withdraw a guilty plea following sentencing.

 A defendant does not have an absolute right to withdraw a guilty plea. *State v. Hughes,* 758 N.W.2d 577, 582 (Minn.2008); *State v. Theis,* 742 N.W.2d

---

1. At oral argument in this court, Carey's counsel equivocated somewhat by suggesting that we remand the case to the district court for resentencing. After oral argument, the state moved to strike that argument on that ground that it had not previously been asserted. With or without the state's motion, we would be obligated to consider only the issues raised by Carey in his appellate briefs and in his submissions to the district court. We agree with the state that Carey did not seek resentencing in his postconviction petition and did not make any argument in his appellate briefs for such a disposition. Thus, the argument has been forfeited. *See Azure v. State,* 700 N.W.2d 443, 447 (Minn.2005); *State v. Grecinger,* 569 N.W.2d 189, 193 n. 8 (Minn.1997). The state's motion is denied as moot.

643, 646 (Minn.2007). After a defendant is sentenced, a defendant may withdraw a guilty plea only by establishing that withdrawal is necessary to correct a "manifest injustice." Minn. R.Crim. P. 15.05, subd. 1; *Theis,* 742 N.W.2d at 646. To establish manifest injustice, a defendant generally must show that his or her guilty plea is invalid. *Theis,* 742 N.W.2d at 646. For a guilty plea to be valid, it "must be accurate, voluntary, and intelligent." *State v. Ecker,* 524 N.W.2d 712, 716 (Minn.1994). As the supreme court has explained,

> The accuracy requirement protects the defendant from pleading guilty to a more serious offense than he or she could be properly convicted of at trial. The voluntariness requirement insures that the guilty plea is not in response to improper pressures or inducements; and the intelligent requirement insures that the defendant understands the charges, his or her rights under the law, and the consequences of pleading guilty.

*Alanis v. State,* 583 N.W.2d 573, 577 (Minn.1998). If a guilty plea fails to meet any of these three requirements, the plea is invalid. *Ecker,* 524 N.W.2d at 716. Thus, if an offender's guilty plea was not accurate, not voluntary, or not intelligent, a manifest injustice exists, and a district court must permit the person to withdraw his plea. *Theis,* 742 N.W.2d at 650. We review a postconviction court's application of the manifest-injustice standard for an abuse of discretion. *Perkins v. State,* 559 N.W.2d 678, 685 (Minn.1997).

■■■ Construing Carey's petition and his legal arguments in light of rule 15.05, subdivision 1, and the above-cited caselaw, the pertinent question is whether Carey has established that his guilty plea was not accurate, not voluntary, or not intelligent. His arguments concerning the manner of sentencing are relevant to one of the three requirements of a valid guilty plea—voluntariness. This is necessarily so because of the caselaw on which Carey relies. He frequently cites *State v. Garcia,* 582 N.W.2d 879 (Minn.1998), where the supreme court held that the defendant was entitled to withdraw his guilty plea because the district court imposed a sentence that was contrary to an essential term of his plea agreement. *Id.* at 882. The court reasoned that " 'an unqualified promise which is part of a plea agreement must be honored or else the guilty plea may be withdrawn.' " *Id.* (quoting *Kochevar v. State,* 281 N.W.2d 680, 687 (Minn.1979)). Later cases make clear that the holding of *Garcia* is based on the requirement that a guilty plea be voluntarily entered. In *State v. Brown,* 606 N.W.2d 670 (Minn. 2000), the supreme court explained the voluntariness requirement by stating, " 'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' " *Id.* at 674 (quoting *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971)). If a promise within a plea agreement is not fulfilled, the defendant cannot be said to have voluntarily entered into the plea agreement. *See, e.g., State v. Wukawitz,* 662 N.W.2d 517, 526 (Minn.2003); *State v. Jumping Eagle,* 620 N.W.2d 42, 43 (Minn.2000). In *Wukawitz,* which Carey also cites, the supreme court explained the rationale of *Garcia* by stating that the appellant was entitled to withdraw his guilty plea because he had shown that an amendment to his sentence was a breach of his plea agreement. 662 N.W.2d at 523–24.

Carey argues that this case is like *Garcia, Wukawitz,* and other cases in that line

because his sentences were imposed contrary to law and because it is impossible for the district court to implement the plea agreement without violating the sentencing guidelines. We may assume without deciding that Carey is correct that a district court may not impose multiple sentences in non-chronological order, even if a defendant agrees to that manner of sentencing.[2] But even if the district court improperly disregarded the sentencing guidelines, Carey is not entitled to withdraw his guilty plea because he cannot establish that his guilty plea is invalid. As the applicable caselaw illustrates, a guilty plea becomes involuntary as a matter of law only if a promise made to the defendant prior to the plea later becomes unfulfilled. *See, e.g., Wukawitz,* 662 N.W.2d at 526; *Jumping Eagle,* 620 N.W.2d at 43. In both *Garcia* and *Wukawitz,* the district court imposed a sentence that was *contrary to* the sentence specified by the plea agreement. In each case, the defendant sought to withdraw his guilty plea in response to an action by the district court that caused a pre-plea promise to become unfulfilled. In each case, the defendant had a plausible argument that if he had known that the district court would impose the sentence that was imposed, he would not have entered into the plea agreement. Thus, in each case, the district court's imposition of a sentence that was in conflict with the plea agreement rendered the guilty plea

involuntary. *Wukawitz,* 662 N.W.2d at 522; *Garcia,* 582 N.W.2d at 882.

In this case, in contrast, there is no promise that was made to Carey before his guilty plea that is unfulfilled. In fact, as Carey now acknowledges, the district court specifically informed him that his plea agreement provided for non-chronological sentencing, contrary to the sentencing guidelines, but he chose to proceed with his guilty plea. As the state argues, Carey received exactly what he bargained for. Furthermore, there was no post-plea change in circumstances that prompted Carey to file his postconviction petition; rather, it appears that he simply decided, three years after his guilty plea, to try to take advantage of an allegedly unlawful term in the plea agreement of which he was well aware at the time of his guilty plea. Carey cannot plausibly argue that he would not have entered into the plea agreement but for the non-chronological manner of sentencing because he was explicitly apprised of that issue and elected to proceed with his guilty plea. Thus, Carey cannot prove that his guilty plea was involuntary.

In sum, the district court's manner of imposing sentences does not give rise to a manifest injustice. Thus, the district court did not err by rejecting Carey's request to withdraw his plea and by denying his postconviction petition. In light of this conclusion, we need not consider the state's argument that Carey's postconviction petition

---

**2.** As mentioned above, the sentencing guidelines provide, "When consecutive sentences are imposed, offenses are sentenced in the order in which they occurred." Minn. Sent. Guidelines II.F. The legislature also has addressed the issue: "Sentencing pursuant to the Sentencing Guidelines is not a right that accrues to a person convicted of a felony; it is a procedure based on state public policy to maintain uniformity, proportionality, rationality, and predictability in sentencing." Minn. Stat. § 244.09, subd. 5 (2000); *see also* 1997

Minn. Laws ch. 96, § 1. In *State v. Misquadace,* 644 N.W.2d 65 (Minn.2002), the supreme court acknowledged that the 1997 amendments to section 244.09, subdivision 5, may have altered the supreme court's previous decision in *State v. Givens,* 544 N.W.2d 774 (1996), which had held that a defendant could waive the "right" to be sentenced under the guidelines. *Misquadace,* 644 N.W.2d at 70–71; *see also Givens,* 544 N.W.2d at 776–77.

is untimely or that Carey's arguments are barred by the doctrine of invited error.

## II.

▇ In his *pro se* supplemental brief, Carey raises four additional issues. He argues that he received ineffective assistance of counsel, that he was subjected to malicious prosecution, that a search of his home was unlawful, and that there is insufficient evidence to support his convictions. The second, third, and fourth arguments need not be considered because they are foreclosed by Carey's guilty plea. *See State v. Farnsworth,* 738 N.W.2d 364, 371 (Minn.2007) (stating that guilty plea waives all nonjurisdictional defects arising before entry of plea); *State v. Lothenbach,* 296 N.W.2d 854, 857 (Minn.1980) (same).

Carey's first *pro se* argument requires proof that, first, "his counsel's representation 'fell below an objective standard of reasonableness' " and, second, " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Gates v. State,* 398 N.W.2d 558, 561 (Minn.1987) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984)). Carey contends that his trial counsel did not perform a reasonable investigation because he did not discover a medical record concerning one of the victims, which Carey asserts would have made it more difficult for the state to prove that sexual penetration occurred.

▇ Even if we assume that Carey could prove the first requirement of the *Strickland* test, his claim nonetheless fails because he cannot prove the second requirement. To prevail on the second requirement, Carey must state facts that, if proven, would affirmatively show that, but for his attorney's alleged ineffective assistance, the result would have been differ-

ent. *Leake v. State,* 737 N.W.2d 531, 536 (Minn.2007). If a person alleging ineffective assistance was convicted by a guilty plea, he must allege that, but for the allegedly ineffective assistance of counsel, he would not have pleaded guilty. *State v. Wiley,* 420 N.W.2d 234, 237 (Minn.App. 1988), *review denied* (Minn. Apr. 26, 1988); *see also Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Carey has made no such allegation or argument. In light of his district court submission and his *pro se* appellate brief, there is no basis for a finding that he would not have pleaded guilty if his trial counsel had been aware of the medical record at issue. Thus, Carey has not stated facts sufficient to prove a claim of ineffective assistance of counsel.

## DECISION

Carey has not established that his guilty plea is invalid. As a result, he has failed to establish that there is a manifest injustice requiring the withdrawal of his guilty plea. Likewise, Carey has not stated facts sufficient to prove a claim of ineffective assistance of counsel. Therefore, the district court did not abuse its discretion by denying his petition for postconviction relief.

**Affirmed; motion denied.**